CURTIS B. COULTER, ESQ., NSB 3034
STACEY UPSON, ESQ., NSB 4773
Coulter Harsh Law
403 Hill Street
Reno, Nevada 89501
Tel (775) 324-3380
Fax (775) 324-3381
ccoulter@coulterlaw.net

LEON GREENBERG, ESQ., SBN 8094
RUTHANN DEVEREAUX-GONZALEZ, ESQ., SBN 15904
Leon Greenberg Professional Corporation
2965 South Jones Blvd- Suite E3
Las Vegas, Nevada 89146
Tel (702) 383-6085
Fax (702) 385-1827
leongreenberg@overtimelaw.com
Ranni@overtimelaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SCOTT POMER, ALLAN ARTEAGA-BROWN, and MICHAEL MAIENSCHEIN individually and on behalf of others similarly situated, | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| RENO CAB COMPANY, ROY L. STREET, ROBIN STREET, FRANK STREET, and BRITTANY STREET | |
| Defendants. | |

   SCOTT POMER, ALLAN ARTEAGA-BROWN, and MICHAEL MAIENSCHEIN, individually and on behalf of others similarly situated, by and through their attorneys, Leon Greenberg Professional Corporation, and Coulter Harsh Law, as and for a Complaint against the defendants, states and alleges, as follows:

1

## JURISDICTION, PARTIES AND PRELIMINARY STATEMENT

1. This Court has jurisdiction over the claims alleged herein because Plaintiffs seek relief pursuant to the Fair Labor Standards Act ("FLSA") for the Defendants' failure to pay minimum wages as required by 29 U.S.C. § 201-218 et. seq. The employment relationship alleged to exist between the parties is subject to the FLSA because the defendants are properly deemed "employers" within the meaning of the FLSA as they have in excess of $500,000 in yearly revenue and the employment alleged involved the use or handling of goods that have moved or were moving in interstate commerce, as those terms are defined in the FLSA.

2. The plaintiffs, SCOTT POMER, ALLAN ARTEAGA-BROWN, and MICHAEL MAIENSCHEIN, (the "individual plaintiffs" or the "named plaintiffs") are, or at all relevant times were, residents of Washoe County in the State of Nevada and are current or former taxicab driver employees of the defendants.

3. The defendant, RENO CAB COMPANY, (hereinafter referred to as "Reno Cab" or one of the "defendants") is a corporation existing and established pursuant to the laws of the State of Nevada with its principal place of business in the County of Washoe, State of Nevada and conducts business in Nevada.

4. Each of the defendants, ROY L. STREET, ROBIN STREET, FRANK STREET, and BRITTANY STREET (the "individual defendants") are, for the purposes of the claims made herein under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (the "FLSA"), an employer of the named plaintiffs and the members of the putative plaintiff class (or FLSA "collective action" plaintiffs) as each has acted on behalf of an employer and/or acted as an employer by willfully, intentionally, knowingly or otherwise promoting, allowing, directing or otherwise creating the compensation policies alleged herein that violate the FLSA, each such individual defendant also exercising the power they had with the other defendant, Reno Cab, by virtue of their status as an officer and/or manager and/or owner and/or director of the same to continue, create, or allow such policies to flourish and remain in existence.

## COLLECTIVE ACTION ALLEGATIONS

5. This is a collective action brought pursuant to 29 U.S.C. § 216(b) on behalf of all persons who worked for the defendants within the three years prior to the commencement of this case as taxi drivers in respect to the FLSA claims made herein.

6. The collective action may include one or more sub-classes consisting of the drivers directly employed by Reno Cab, if the Court finds that more manageable.

7. The plaintiffs bring this action as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act (hereinafter "FLSA") on behalf of themselves and all similarly situated persons employed by the defendant Reno Cab in the State of Nevada who file written consents with the Court to join this action.

8. The similarly situated persons for FLSA purposes who may elect to join this action, upon notice to them that will be sought to advise them of their ability to do so, consists of all persons employed by defendant Reno Cab during the three years prior to the filing of this Complaint and continuing until entry of judgment, such persons also being employed as taxi drivers by Reno Cab, such employment involving the driving of taxi cabs for such defendants in the State of Nevada.

9. Although the plaintiffs were treated as "independent contractors" by the defendants, the plaintiffs were, as a matter of law, employees of the defendants and the defendants were, as a matter of law, the employer of the plaintiffs in respect to their activities conducted as part of defendants' "vehicle for hire" business under the economic realities of the circumstances.

10. As part of their employment arrangement with the defendants, plaintiffs were required to pay a daily fee to defendants to "lease" the taxicab they used to perform their work. Such "lease" fee was a nominal amount of $10.00 or a similar amount per day. After paying the nominal per day "lease" fee to defendants, plaintiffs were required to work a minimum ten (10) hour shift each day they worked for defendants. Such shifts were pre-arranged by defendants and plaintiffs could not choose to work fewer hours than ten (10) in a single shift. Defendants also directed

which days per week plaintiffs were required to work, and the number of such days per week. Plaintiffs' wages paid by defendants were in the form of a "commission split" arrangement, under which plaintiffs would receive 50% of the taxicab fares they collected from paying customers during their shift, and defendants would receive 50% of the taxicab fares plaintiffs collected from such customers during their shift.

11. As described in paragraph 10, the plaintiffs did not, in reality, operate as the "independent contractors" that defendants claimed they were, as the plaintiffs were unable to set their hours of work or exercise any independent control over the number of hours they chose to work in a given shift. The plaintiffs further had no actual investment in any truly independent business in respect to the work they performed for the defendants, in that the "lease" fee required by defendants from each of its vehicle for hire drivers was $10.00 or a similar nominal amount per day. Moreover, defendants were as a practical matter not "leasing" any vehicle to the plaintiffs or its other vehicle for hire drivers for $10.00 or a similar nominal amount per day and its business was dependent upon the fares collected by the plaintiffs and its other vehicle for hire drivers during their shift as defendants had a 50% stake in the total fares so collected, and the success of defendants' business was directly dependent upon the defendants' share of the fares collected by its vehicle for hire drivers and not upon the money defendants collected from the plaintiffs and other vehicle for hire drivers in the form of a nominal "lease" fee. In the event the plaintiffs and defendants' other vehicle for hire operators, who also worked for the defendants under similar arrangements, failed to collect significant passenger fares, defendants would not allow them to continue to "lease" vehicles for $10.00 or the similar nominal "lease fee" per day that they were charged. Thus, plaintiffs and the defendants' other vehicle for hire drivers were not acting as truly independent business operators but were de facto commission compensated employees of the defendants as a matter of economic reality.

12. The economic realities of the relationship between the plaintiffs and defendants' other vehicle for hire drivers and the defendants was one of employment,

in that the defendants mandated the hours and days of work of its vehicle for hire drivers and also substantially controlled the amount of money they would earn by, among other things, referring fare paying customers to them via "radio calls." Plaintiffs and defendants' other vehicle for hire drivers could not decline to accept such radio call assignments and had to follow all of defendants' rules of operation and defendants could refuse to continue to allow them to drive the defendants' vehicles for hire at anytime, without notice, and without cause. Plaintiffs and defendants' other vehicle for hire drivers were treated, in all respects, exactly like employees of the defendants by the defendants.

13. A common circumstance of the taxi drivers giving rise to the FLSA collective action allegations is that while they were employed by defendants those taxi drivers were not paid the minimum wage required by the FLSA for many or most of their work weeks that they worked in that their hourly compensation, when calculated pursuant to the requirements of the FLSA did not equal at least the minimum hourly wage required by law.

14. Pursuant to Section 16(b) of the FLSA, the individual plaintiffs bring this Complaint as a collective action (also commonly referred to as an "opt-in" class), on behalf of themselves and all persons similarly situated, to wit a putative class of taxi drivers employed by the defendants during the three years prior to the filing of this Complaint until entry of judgment after trial, such taxi drivers not being paid, on occasion, minimum wage in accordance with the FLSA. Such weeks of work where defendants failed to pay such minimum wages are known to defendants who possess the representative plaintiffs' working time and compensation records and often arose during slow periods of business for the Reno taxi industry, the representative plaintiffs having experienced at least one such failure to pay minimum wages during one or more weeks in the month of January during the three years preceding the filing of this Complaint.

15. The named plaintiffs are informed and believe, and based thereon allege

that there are at least 100 putative collective action members. The actual number of class members is readily ascertainable by a review of the defendants' records through appropriate discovery.

## AS AND FOR A FIRST CLAIM FOR RELIEF PURSUANT TO THE FAIR LABOR STANDARDS ACT AGAINST ALL DEFENDANTS

16.  The named plaintiffs repeat all of the allegations previously made and bring this First Claim for Relief pursuant to 29 U.S.C. § 216(b) on behalf of themselves and all persons who have filed, or will file, their written consents with the Court to join this lawsuit and against all defendants including the individual defendants.

17.  Pursuant to the applicable provision of the FLSA, 29 U.S.C. § 206, the named plaintiffs who have filed consents to join this case and the members of the proposed plaintiff collective action were entitled to a minimum hourly wage. The plaintiffs and the members of the proposed plaintiff collective action did not, during every work week, receive the minimum wage of at least $7.25 an hour required by Section 206 of the FLSA. Defendants' violations of the FLSA were willful and intentional.

18.  While employers under the FLSA can avail themselves of a "tip credit" against its minimum wage obligation, allowing them under certain circumstances to pay a minimum hourly wage of less than $7.25 an hour, defendants could not claim that tip credit in respect to the plaintiffs who have filed consents to join this case and those similarly situated. Defendants could not claim such a "tip credit" because notice was not provided to the named plaintiffs and other taxi drivers as required by 29 U.S.C. § 203(m). Additionally they failed to comply with 29 U.S.C. § 203(m) which requires that the tips plaintiffs and those similarly situated receive be completely retained by such employees and *not* be taken or used by their employer for any purpose. They failed to comply with such requirement of the FLSA by requiring that

plaintiffs who have filed consents to join this case and those similarly situated use their tips to pay for the fuel costs incurred by Reno Cab in operating its taxi cabs. Such requirement and lack of notice provided to employee taxi drivers rendered defendants ineligible to claim any tip credit under 29 U.S.C. § 203(m) and required that they pay the plaintiffs and those similarly situated the full FLSA minimum wage of at least $7.25 an hour for every hour worked during every work week.

19. Commencing March 23, 2018, the provisions of 29 U.S.C. § 203(m) were amended to prohibit employers from using or taking any tips earned by their employees for any purpose, even if the employee was earning a wage in excess of $7.25 an hour. Accordingly, the plaintiffs and those similarly situated are entitled to collect from defendants the full amount of the fuel costs defendants forced such persons to pay for Reno Cab's taxi cabs, and equal amount as liquidated damages, pursuant to 29 U.S.C. § 216(b). That is because such forced payment of fuel costs violated 29 U.S.C. § 203(m) as revised on March 23, 2018 as those costs were paid from the tips of those persons and constituted an improper use or retention of employee tips by defendants in violation of the FLSA.

20. The plaintiffs on behalf of themselves and all other similarly situated persons who consent in writing to join this action, seek, on this First Claim for Relief, a judgment for unpaid minimum wages, and additional liquidated damages of 100% of any unpaid minimum wages, and for the amount of fuel costs such persons were forced to pay since those costs constituted an improper taking of those persons' tips by the defendants in violation of the FLSA, along with an equal amount of liquidated damages, such sums to be determined based upon an accounting of the hours worked by the plaintiffs and any such other persons who consent to join this action, and the wages they were paid and the fuel costs they were forced to pay, and the plaintiffs also seek an award of attorneys' fees, interest and costs as provided for by the FLSA.

1 | WHEREFORE, plaintiffs demand the relief on each cause of action as alleged aforesaid.    Plaintiffs demand a trial by jury on all issues so triable.

Dated this 5th day of January, 2022

                                      Leon Greenberg Professional Corporation

                                      By: */s/ Ruthann Devereaux-Gonzalez*
                                      RUTHANN DEVEREAUX-GONZALEZ, ESQ.
                                      Nevada Bar No.: 15904
                                      2965 South Jones Blvd- Suite E3
                                      Las Vegas, Nevada 89146
                                      Tel (702) 383-6085
                                      Fax (702) 385-1827
                                      Attorney for Plaintiff

CONSENT TO JOINDER

        SCOTT POMER, by signing below, hereby consents to join this case as a plaintiff pursuant to 29 U.S.C. 216(b).

_____
SCOTT POMER

CONSENT TO JOINDER

Allan Samuel Arteaga-Brown, by signing below, hereby consents to join this case as a plaintiff pursuant to 29 U.S.C. 216(b).

_____
Allan Samuel Arteaga-Brown

CONSENT TO JOINDER

Michael Maienschein, by signing below, hereby consents to join this case as a plaintiff pursuant to 29 U.S.C. 216(b).

_____
Michael Maienschein